UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR 07-01009-SJO |
| Plaintiff, | ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| v. | ) ) | [Docket No. 25] |
| JOSE JUAN ZACARIAS, | ) ) | |
| Defendant. | ) ) | |

    This matter is before the Court on Defendant Jose Juan Zacarias's Motion to Suppress Evidence, filed February 14, 2008. Plaintiff United States of America (the "Government") filed an Opposition, to which Zacarias replied. On March 10, 2008, the Court held a hearing on the Motion.[1] For the following reasons, the Court GRANTS Zacarias's Motion.

I.    BACKGROUND

    On the evening of January 5, 2006, Los Angeles County Sheriff's Deputies Gerhaldt Groenow and Frederick E. Morse (collectively, the "Deputies") were on patrol. (Groenow Decl. ¶ 2; Morse Decl. ¶ 2.) While driving south on Beach Street in Los Angeles, the Deputies saw a white GMC Yukon parked in a red zone. (Groenow Decl. ¶ 3; Morse Decl. ¶ 3.) The Deputies

---

    [1] At the hearing, the parties agreed to have the Motion decided solely on the basis of the briefs and seven additional stipulated facts, included in Section II.C of this Order.

stopped their car to possibly cite the driver for a parking violation. (Groenow Decl. ¶ 3; Morse Decl. ¶ 3.)

Morse approached the passenger side of the vehicle (Morse Decl. ¶ 3), while Groenow approached the driver's side. (Groenow Decl. ¶ 6). Inside the vehicle were four individuals, although it is not clear when the Deputies discovered this fact. (Groenow Decl. ¶ 4.) According to Groenow, because it was "dark outside," he used a flashlight as he approached the vehicle. (Groenow Decl. ¶ 5.) Groenow states that, while walking up to the driver's side, he observed that the driver, later identified as Zacarias, "seemed to be trying to conceal something in one of his hands." (Groenow Decl. ¶ 6.) Groenow, citing a concern for his safety, pulled his gun and asked Zacarias to show his hands. (Groenow Decl. ¶ 6.) According to Zacarias, Groenow "pointed [his] gun at me, and shined his flashlight at my face." (Zacarias Decl. ¶ 3.)[2]

Groenow claims that Zacarias placed the objects he was trying to conceal onto the driver's side arm rest. (Groenow Decl. ¶ 7.) The objects were a cell phone and a glass pipe that appeared to Groenow to be the type of pipe used to ingest methamphetamine. (Groenow Decl. ¶ 7.) Zacarias and the other individuals in the vehicle were ordered out of the car, handcuffed, placed in the police car, and the officers ran name checks. (Zacarias Decl. ¶ 4; Groenow Decl. ¶ 8.)

While the name checks were progressing, Morse conducted an inventory search of Zacarias' vehicle. (Morse Decl. ¶ 7.) During the search, Morse opened the glove box and saw a number of envelopes "sticking out from the back of the glove box." (Morse Decl. ¶ 7.) According to Morse, "[i]t looked as if someone had stuffed the papers back there to hide them." (Morse Decl. ¶ 7.) Morse opened the envelopes and found a number of checks and money orders. (Morse Decl. ¶ 7.) Morse relayed this information to Groenow, who concluded that the checks and money orders were stolen. (Groenow Decl. ¶ 9.) The car was then towed and impounded. (Groenow Decl. ¶ 10.)

---

[2] Groenow acknowledges drawing his gun, but states, "I do not recall pointing my gun at anyone." (Groenow Decl. ¶ 6.) Because Groenow does not deny pointing his gun at Zacarias, and because the Government did not call Groenow as a witness to controvert Zacarias' account, the Court concludes that, on the basis of Zacarias's declaration testimony, Groenow pointed his gun at Zacarias.

Groenow arrested Zacarias for a violation of California Health and Safety Code § 11364 for possession of the pipe. (Groenow Decl. ¶ 11.) Groenow read Zacarias his *Miranda* rights, which Zacarias waived. (Groenow Decl. ¶ 11.) Zacarias subsequently made incriminating statements about the mail found in his vehicle, leading Groenow to charge Zacarias with a violation of California Penal Code § 496 for possession of stolen mail. (Groenow Decl. ¶¶ 12-14.)

Zacarias was ultimately indicted for possession of stolen mail in violation of 18 U.S.C. § 1708. Now, Zacarias moves to suppress the mail found in his vehicle, as well as the incriminating statements he made, arguing that his arrest and the search of his car were unlawful.

II.   DISCUSSION

Evidence may be suppressed as "fruit of the poisonous tree" if found to be the product of an unreasonable search or seizure. *See United States v. Segura*, 468 U.S. 796, 815 (1984). Warrantless searches and seizures are unreasonable unless they fall within one of the exceptions to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

Zacarias argues that (1) the stop of his vehicle was an unreasonable seizure; (2) even if the stop of his vehicle was reasonable, his arrest was an unreasonable seizure; (3) even if his arrest was reasonable, the impoundment of his vehicle was an unreasonable seizure; (4) even if the impoundment of his vehicle was reasonable, the search of his vehicle was an unreasonable search; and (5) even if the search of his vehicle was reasonable, the opening of the envelopes in his glove box exceeded the scope of the search.

A.   The Stop

A parking violation provides officers "with a sufficient basis to conduct an investigatory stop" of the offending vehicle. *See United States v. Choudhry*, 461 F.3d 1097, 1104 (9th Cir. 2006). Parking in a red zone is a violation of California Vehicle Code § 21458. Zacarias was parked in a red zone. (Groenow Decl. ¶ 3; Morse Decl. ¶ 3.)[3] The stop of his vehicle was thus reasonable.

---

[3] The Reply states that "Zacarias will testify that he was not parked at a red painted curb." (Reply 3.) However, the parties jointly agreed to offer no testimony beyond that in the declarations attached to the briefs. On the basis of the record before the Court, Zacarias has failed to controvert the testimony of Groenow and Morse that he was parked at a red curb.

B. <u>The Arrest</u>

A warrantless arrest is permissible if an officer has probable cause to believe that the arrestee is about to engage in criminal activity or had already done so. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). According to the Government, Groenow observed Zacarias in possession of a glass pipe for ingesting methamphetamine, giving Groenow probable cause to arrest Zacarias. *See Hollyfield v. United States*, 407 F.2d 1326 (9th Cir. 1969). Zacarias, however, argues that he was not arrested when ordered out of his vehicle, but instead, when Groenow approached his vehicle, pointing his gun at Zacarias. According to Zacarias, no probable cause existed for such an arrest.

"[I]f the police draw their guns it greatly increases the seriousness of the stop." *Washington v. Lambert*, 98 F.3d 1181, 1188 (9th Cir. 1996); *see also United States v. Serna-Barreto*, 842 F.2d 965, 967 (7th Cir. 1988) ("The significance of the pointed gun is that it makes the encounter far more frightening than if the officer's gun remains holstered, or even drawn but pointed down at his side; and certainly where the danger of the encounter to the officer, though potentially serious, is not clear and present, the deliberate pointing of a gun at the suspect is problematic."). Whether the drawing and pointing of a gun transforms a permissible stop into an arrest turns on an examination of the reasonableness of the police conduct in light of a number of factors:

> [O]ur cases make clear that we have only allowed the use of especially intrusive means of effecting a stop in special circumstances, such as (1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the police have information that the suspect is currently armed; (3) where the stop closely follows a violent crime; and (4) where the police have information that a crime that may involve violence is about to occur. Clearly, some combination of these factors may also justify the use of aggressive police action without causing an investigatory stop to turn into an arrest

*Lambert*, 98 F.3d at 1189.

Here, Groenow states that he pulled his gun for his safety, but fails to establish why it was reasonable to do so under the circumstances. There is no evidence that Zacarias was uncooperative or prone to flight. Nor is there any evidence of recent or impending violent criminal

4

activity in the area. The only facts in Groenow's favor are that it was "dark outside" and Zacarias "seemed to be trying to conceal something in one of his hands."[4] However, there is no evidence as to the time of day or night, or whether there were street or other artificial lights illuminating the scene. Additionally, Groenow does not state that he believed Zacarias was or might have been armed, only that he was trying to conceal something.[5] In light of the scant evidence on the record supporting the existence of a legitimate personal safety concern, the Court finds that Groenow's pointing of his gun at Zacarias was unreasonable under the circumstances and constituted an arrest. *See United States v. Delgadillo-Velasquez*, 856 F.2d 1292 (9th Cir. 1988) (finding that a stop was an arrest because "[t]he show of force and detention techniques used in this context are indistinguishable from police conduct in an arrest").

According to Zacarias, his arrest is thus without probable cause because it is only based on his car being parked at a red curb. The Court agrees. Because Zacarias's arrest was unlawful, the stolen mail and Zacarias's incriminating statements were unlawfully obtained.

C.   The Impoundment and Inventory of the Vehicle

Even assuming Zacarias's arrest was lawful, the impoundment and subsequent search of his vehicle was not. In reaching this conclusion, the Court relies on the following seven facts stipulated to by the parties:

- Groenow and Morse seized the White Yukon truck driven by Zacarias pursuant to California Vehicle Code § 22651(h)(1).
- Groenow and Morse did not advise Zacarias that his vehicle could be secured, legally parked, and left at the location.

---

[4] Groenow and Morse state that there were four occupants in the vehicle, but it is not clear from their declarations when this fact was discovered. Accordingly, the Court does not consider this fact in its reasonableness analysis.

[5] The Court could engage in conjecture and speculation to find probable cause to arrest, but that is not the Court's role. The Government bears the burden of establishing probable cause. By electing to not call any witnesses to supplement the declarations or fill in the gaps in the record, the Government failed to meet its burden.

- Groenow and Morse did not advise Zacarias that his vehicle could be released to a designated responsible person who was present and would accept responsibility for care of the vehicle. They do not know whether any of the three passengers in Zacarias' vehicle at the time Zacarias was arrested were licensed to drive.
- Groenow and Morse believed that Los Angeles Sheriff's Department ("LASD") Policy 5-01 / 060.05 was permissive, rather than mandatory, and that they could either follow the policy or not.
- Groenow and Morse impounded Zacarias' vehicle because it was in a high-crime area and it might be needed for evidence.
- Groenow and Morse were concerned about leaving the vehicle in the area because it was a high-crime area. They were also concerned that if harm were to come to the vehicle while the Deputies moved it from point A to point B, the Deputies might be liable.
- Groenow and Morse were concerned that if they released Zacarias' vehicle to one of the passengers who were present, the vehicle would not be kept safe.

(Proposed Findings of Fact & Conclusions of Law ("FFCL") 2-3.)

Under California Vehicle Code § 22651(h)(1), an officer may impound a vehicle when the officer "arrests a person driving or in control of a vehicle for an alleged offense and the officer is . . . required or permitted to take, and does take, the person into custody." However, pursuant to the "community caretaker" doctrine, "[a]n officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." *Miranda v. City of Cornelius*, 429 F.3d 858, 866 (9th Cir. 2005). Impoundment must be "pursuant to standard police procedures" and "made without investigatory intent." *United States v. Vasey*, 834 F.2d 782, 790 n.4 (9th Cir. 1987). If impoundment is unlawful, an inventory search of the vehicle incident thereto is likewise unlawful.[6] *See United States v. Dugay*, 93 F.3d 346, 353 (7th Cir. 1996).

---

[6] Although Zacarias's vehicle was searched prior to being physically impounded, the search is treated as being incident to the impound, and thus, if the impoundment was unlawful, the search was unlawful. *See United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977).

LASD impoundment policy provides, in pertinent part, that, "[i]n an arrest situation, it is the policy of this Department that Deputies shall advise the owner/driver, prior to storing his vehicle, that the vehicle . . . may be released to a designated responsible person who is present and will accept the responsibility for care of the vehicle." (Hr'g on Mot. Suppress, Government Ex. ("Ex.") 1.) Contrary to Groenow and Morse's belief, this policy is not permissive. (Ex. 1 (stating that "Deputies *shall* advise . . . .") (emphasis added).) According to Zacarias, the impoundment of his vehicle was unlawful because two of the passengers in his vehicle were immediately released following the incident and thus were available to drive the car away. (Reply 6.) The Government claims that the vehicle was not released to these individuals because it "would not be kept safe." (FFCL 3.) However, no evidence exists to support this belief; the Government presents no evidence that these individuals were not "responsible person[s]" capable of caring for the vehicle, which is all that is required under the LASD impoundment policy.[7]

Because the impoundment of Zacarias's vehicle was unlawful, the search was unlawful.[8] The stolen mail found in the vehicle and incriminating statements must be suppressed.

III.     RULING

For the foregoing reasons, the Court GRANTS Zacarias's Motion.

IT IS SO ORDERED.

Dated this 15th day of April, 2008

S. JAMES OTERO
_____
S. JAMES OTERO
UNITED STATES DISTRICT JUDGE

---

[7] The Deputies admit that they did not know, and did not seek to find out, whether these passengers were lawfully registered drivers. (FFCL 2.)

[8] The Government does not argue that the search was permissible pursuant to the search-incident-to-arrest exception to the warrant requirement. Instead, the Government relies solely on the inventory search exception. *See United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000) (distinguishing the two exceptions). Accordingly, the Court does not analyze the search-incident-to-arrest exception.